MHK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YCB INTERNATIONAL INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 09 C 7221 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| ) | |
| UCF TRADING CO., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

In this contract dispute, YCB International, Inc. sues UCF Trading Co. YCB alleges that it shipped UCF thousands of bearings over the course of the parties' relationship and that UCF has since failed to pay for the bearings. UCF moves to dismiss, arguing that the Court lacks personal jurisdiction over it. In the event that the Court disagrees, UCF asks the Court to dismiss YCB's suit pursuant to the doctrine of *forum non conveniens*.

YCB and UCF are both middle men. Each company buys and then resells bearings. Between April 2008 and June 2008 UCF issued 13 purchase orders to YCB ordering thousands of different bearings. (Liu Aff. Ex. B). Each purchase order was directed to YCB and sent to YCB's Bolingbrook, Illinois headquarters. (Liu Aff. Ex. B). The purchase orders contained marking, packaging and shipping instructions, and never directed YCB to ship the bearings to UCF's headquarters in the Bahamas. (Liu Aff. Ex. B). Instead, the purchase orders directed YCB to ship the bearings to various cities in the southeastern United States, including Dallas, Mobile, Louisville, Cincinatti, and Baltimore. (Liu Aff. Ex. B).

1

When UCF failed to pay for the bearings, YCB's President and CEO, Mark Liu, met with UCF's President Robert Gagnon in New Jersey to discuss payment plans. (Liu Aff. at ¶ 8). After the meeting, Gagnon sent to YCB's Bolingbrook Headquarters a letter documenting the more than $1,000,000 in outstanding invoices and memorializing a payment plan. (Liu Aff. Ex. C).

Federal Rule of Civil Procedure 12(b)(2) allows non-resident defendants to challenge the Court's assertion of jurisdiction over them. Fed. R. Civ. P. 12(b)(2). Under Rule 12(b)(2) the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In determining whether to exercise personal jurisdiction, a court may examine affidavits and other evidentiary materials submitted by the parties, but a court takes allegations in the Complaint as true unless controverted by a defendant's affidavit. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). However, if the Court determines that material facts are in dispute, it may hold an evidentiary hearing to resolve the dispute. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In this case, the material facts are not in dispute.

A federal court exercising diversity jurisdiction has personal jurisdiction over a defendant only if a corresponding state court would have personal jurisdiction. *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The Illinois Long-Arm Statute lists activities that permit Illinois courts to exercise jurisdiction over out-of-state defendants. 735 ILCS 5/2-209(a). The Long-Arm Statute allows Illinois courts to exercise jurisdiction over non-resident defendants that: (1) transact any business within Illinois or (7) make or perform any contract or promise that is substantially connected with Illinois. 735 ILCS 5/2-209(a)(1) & (7). Illinois courts have regularly exercised personal jurisdiction over non-resident corporate purchasers who engage in commercial relationships with Illinois corporations. *See, e.g.,*

2

*Royal Extrusions Ltd. v. Continental Window & Glass Corp.*, 349 Ill. App. 3d 642, 647-48, 812 N.E.2d 554, (Ill. App. Ct. 2004); *Ruprecht Co. v. Sysco Food Serv. of Seattle, Inc.*, 309 Ill. App. 3d 113, 120, 722 N.E.2d 694 (Ill. App. Ct. 1999); *D.S. America (East) Inc. v. Elmendorf Grafica, Inc.*, 274 Ill. App. 3d 643, 645-49, 654 N.E.2d 452 (Ill. App. Ct. 1995); *Autotech Controls Corp. v. K.J. Elec. Corp.*, 256 Ill. App. 3d 721, 724-25, 628 N.E.2d 990 (Ill. App. Ct. 1993); *G.M. Signs, Inc. v. Kirn Signs, Inc.*, 231 Ill. App. 3d 339, 343-44, 596 N.E.2d 212 (Ill. App. Ct. 1992).

In examining whether the exercise personal jurisdiction over non-resident purchasers comports with due process, Illinois courts distinguish between "passive purchasers," who merely place orders at a stated price from a catalog or advertisement, and "active purchasers," who negotiate terms or require custom-made products. *See G.M. Signs, Inc.*, 231 Ill. App. Ct. at 343. Even where the bulk of negotiations took place outside of Illinois, Illinois courts have nonetheless found the exercise of personal jurisdiction proper where a commercial buyer deliberately reaches out beyond its home state to avail itself of the benefits of commercial ties with an Illinois corporation. *Ruprecht*, 309 Ill. App. 3d at 121-22; *D.S. America (East) Inc.*, 274 Ill. App. 3d at 645-49.

In this case, UCF engaged in ongoing a commercial relationship with YCB, an Illinois corporation. When it purchased bearings from YCB, it submitted purchase orders that contained specific instructions regarding the shipment, packaging, and labeling of the bearings. (Liu Aff. Ex. B). It further included negotiated terms and conditions with YCB, among them that seller "agrees and warrants that its price to UCF will not be higher than the lowest price to any other purchaser." (Gagnon Aff. Ex. B). When UCF had difficulty paying outstanding invoices, its president met with YCB's president to negotiate a payment plan. (Liu Aff. Ex. C). Given the ongoing, commercial nature of the

relationship between UCF and YCB, the Court finds that UCF was an active purchaser of goods and the exercise of personal jurisdiction over it is consistent with the Illinois Long Arm statute.

The court has jurisdiction over UCF only if the exercise of jurisdiction comports with both state statutory law, state constitutional law, and federal constitutional law. *RAR, Inc.*, 107 F.3d at 1276. And while state court precedent interpreting the Illinois Long Arm statute is binding on this Court, state court precedent interpreting federal due process law is not. *Id.* at 1275-76. The Supreme Court instructs that to satisfy the federal due process inquiry, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The minimum contacts must be sufficient to create a "substantial connection" between the defendant and the forum state. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). YCB does not argue that UCF maintains sufficient continuous and systematic contacts in Illinois to make the exercise of general jurisdiction fair, and instead argues that the Court possesses specific jurisdiction over UCF based upon the commercial relationship between the parties. *See generally, RAR, Inc.*, 107 F.3d at 1277 (discussing difference between general and specific jurisdiction).

In determining whether specific jurisdiction exists, courts must decide whether the defendant "purposefully established minimum contacts within the forum state" and whether these contacts would make the exercise of personal jurisdiction fair and reasonable under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Central to this analysis is showing that the defendant could "reasonably anticipate being haled into court" in the forum state. *Id.* at 474.

YCB has satisfied due process demands under federal law. In contesting the existence of jurisdiction over it, UCF argues that its relationship was not with YCB but with the manufacturer of the bearings, Yantai CMC Bearing Company, which was located in China. UCF points to the affidavit of its President stating that negotiations for the production requirements of the bearings took place at CMC Bearing's plant in China. CMC Bearing *produced* the bearings, but the undisputed evidence demonstrates that UCF *purchased* the bearings from YCB, which, like UCF, was a middle man. Thus, the mere fact that UCF negotiated the production of the bearings with CMC Bearing is not relevant to the question of whether UCF had an ongoing business relationship with YCB or whether UCF negotiated the terms and conditions of the purchase of those bearings with YCB.

UCF also argues that CMC Bearing created YCB to serve as its sales office and that YCB is owned by CMC Bearing. First, UCF relies on Gagnon's affidavit to support these claims, and Gagnon bases his averments on information and belief, see Gagnon Aff. at ¶¶ 8,9,19 & 22, and not on his personal knowledge. Second, whether YCB is owned by CMC Bearing simply is not relevant to the question of whether UCF had an ongoing business relationship with YCB. The mere fact that YCB may have served as the sales office for CMC Bearing does not mean that UCF dealt with CMC Bearing and not with YCB. In fact, it suggests the exact opposite — that when a company wished to purchase bearings manufactured by CMC Bearing, it did so by developing a relationship with YCB.

UCF seems to be arguing that YCB is a fictitious entity and that its actual dealings are with CMC Bearing and not with YCB. The undisputed evidence demonstrates otherwise. When UCF desired to order more bearings, it sent purchase orders to YCB, and not to CMC Bearing.[1] Every

---

[1] In its reply, UCF submits an email that it allegedly sent to CMC Bearing as evidence that it submitted its purchase orders not to YCB but to CMC. First, this email references an order that occurred several months *before* the 13 purchase orders at issue in this dispute. Second,

5

purchase order at issue in this case was signed and sent via mail to YCB at its offices in Bolingbrook. Every purchase order at issue in this case contained instructions related to the packaging, shipping, and labeling of the bearings. Every purchase order at issue in this case contained terms and conditions, including a term protecting UCF's purchase price. Despite UCF's contention that it negotiated only with CMC Bearing, its President avers otherwise in his affidavit, stating that *YCB* had represented that the bearings were manufactured by CMC Bearing and met UCF's expected standards. (Gagnon Aff. at ¶ 24). Moreover, when UCF failed to pay for the bearings shipped to it by YCB, its President met with YCB's President to negotiate a payment plan. UCF's argument that it did not have any relationship with YCB is unavailing.

The Court finds that the UCF had ongoing, substantial business contacts with YCB, which operated within the state of Illinois. It purposefully contacted and developed a business relationship with an Illinois company, negotiated the terms and conditions of its purchase with that company, and further negotiated the terms and conditions of its payments to that company. The Court further finds that the instant matter has arisen from those contacts. The Court concludes that UCF could reasonably expect to be haled into an Illinois court based on the nature of its relationship with YCB, and therefore its due process rights are not impacted by the assertion of personal jurisdiction. The Court therefore DENIES UCF's Motion to Dismiss for lack of personal jurisdiction.

UCF next argues that the Court should nonetheless dismiss YCB's suit because the forum is not convenient. The doctrine of *forum non conveniens* allows a district court to dismiss a suit over which it normally would have jurisdiction, to best serve the convenience of the parties and the interests of

---

the subject line of the email, YCB PO#2995-2997, only further affirms the relationship between UCF and YCB. Finally, the email is directed not only to CMC Bearing but also to Mark Liu, YCB's President.

justice. *Stroitelstvo Bulgaria, Ltd. v. Bulgarian-American Enterprise Fund.*, 589 F.3d 417, 421 (7th Cir. 2009). A threshold requirement for any *forum non conveniens* dismissal is the availability of an adequate alternative forum. *Id.* UCF offers only a conclusory statement that the Bahamian courts offer an adequate and fair forum for YCB to pursue its remedies. Given that the burden of proof is on the party seeking dismissal, *In re Ford Motor Co.*, 344 F.3d 648, 652 (7th Cir. 2002), UCF has failed to meet its initial burden in seeking a dismissal for *forum non conveniens*. Although UCF attempts to submit evidence in support of its claim in its reply, arguments raised for the first time in the reply are waived. *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010). Moreover, UCF fails even in its reply to explain whether YCB's claims would be barred in a Bahamian court by the statute of limitations in that forum. *See generally Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th Cir. 2010) (discussing whether the passing of the statute of limitations renders an otherwise adequate forum inadequate). The Court determines that UCF has failed to demonstrate that the Bahamas is an adequate, available forum.

Even if UCF had demonstrated that the Bahamas was an adequate, available forum, it cannot demonstrate that it is more convenient. Courts balance both private factors, such as the availability of witnesses or access to evidence, and public factors, such as court congestion or the forums' interest in the litigation, to determine whether to dismiss on *forum non conveniens* grounds. *Clerides v. Boeing Co.*, 534 F.3d 623, 629 (7th Cir. 2008). As a general rule, a plaintiff's choice in forum should be disturbed only if the defendant can demonstrate that the balance of factors clearly favors the alternative forum. *Clerides v. Boeing Co.*, 534 F.3d 623, 629 (7th Cir. 2008). UCF argues that YCB's choice in forum should not be given deference because it functions as CMC Bearing's sales office, but that argument makes little sense. As noted earlier, YCB is not a shell corporation or holding company with

little substantive existence. It has offices and employees in Illinois. Thus, UCF must demonstrate that the Bahamas is a clearly more convenient forum.

UCF cannot demonstrate that the convenience of the parties or the interests of justice would be served by dismissing this suit and forcing YCB to pursue its remedy in the Bahamas. UCF claims that the bulk of the witnesses who have knowledge relating to this dispute are located outside the United States, pointing to CMC Bearing employees. But the fact that CMC Bearing employees are citizens of China does not mean that the Bahamas is a more convenient forum for them. UCF next suggests that the bulk of the documents in this case reside outside the United States, pointing to its own books and records in the Bahamas. But just as UCF's records are in the Bahamas, YCB's records are in Illinois. Moreover, the bearings themselves were not shipped to the Bahamas but to various cities within the United States. UCF appears to assert a defense that the bearings were not manufactured by CMC Bearing as required by the purchase orders. Given this defense, the bearings themselves, which presumably are somewhere in the United States, are a source of evidence. Nor do the interests of justice also do not compel the dismissal of this suit. The litigation involves corporations from Illinois and the Bahamas. Illinois's interest in the litigation therefore is just as strong as the interest of the citizens of the Bahamas. The Bahamas are not even marginally more convenient. The Court therefore DENIES UCF's Motion to Dismiss on *forum non conveniens* grounds.

IT IS SO ORDERED.

7/21/10
Dated
7-21-2010

Hon. William J. Hibbler
U.S. District Court