IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YCB INTERNATIONAL, INC., | )<br>) |
| Plaintiff/Counter-Defendant | )<br>) No. 09 C 7221<br>) |
| v. | )<br>) The Honorable William J. Hibbler |
| UCF TRADING CO., LTD., | )<br>) |
| Defendant/Counter-Plaintiff. | )<br>) |
| UCF TRADING CO., LTD., | )<br>) |
| Third-Party Plaintiff | )<br>) |
| v. | )<br>) |
| YANTAI CMC BEARING CO., | )<br>) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

YCB International sued UCF Trading Company, alleging that UCF had not paid for bearings that YCB had delivered to it. In its answer, UCF raised a number of affirmative defenses, most of which centered around allegations that the bearings were counterfeit. UCF also filed a counterclaim based on similar allegations against YCB. Finally, UCF filed a third-party claim against Yantai CMC Bearing (CMC) in which it alleged that CMC is an alter-ego of YCB and that CMC is also liable to it for the counterfeit bearings. YCB moves to strike the affirmative defenses and to dismiss the Counterclaim, arguing that UCF has not adequately pleaded those defenses and counterclaims. CMC

1

moves to dismiss the third-party complaint against it, arguing that it is not subject to this Court's jurisdiction.

I. Background

YCB alleges that UCF has not paid for bearings that it purchased in 2008 in thirteen separate purchase orders. As noted in a prior opinion, YCB and UCF are both middle men — neither manufactures bearings or products made from bearings. Instead, they purchase and resell the bearings to their customers.

UCF contracts for the design of bearings that it sells to its customers. As part of the design process, it provides sample bearings to its customers who determine whether the bearings meet their quality control standards. Once the customer has approved the design of a bearing, UCF contracts with an out-of-country supplier to manufacture the bearings based on the approved design. Since 1990, UCF purchased bearings that were manufactured by CMC, a company located in Yantai, China. Throughout the past 20 years, UCF visited CMC's manufacturing facility in China to inspect the manufacturing process.

In 2008, UCF submitted 13 purchase orders to YCB. UCF alleges that it submitted these purchase orders to both YCB and to CMC and that both companies accepted the orders. Among other things, UCF alleges that YCB warranted that the bearings would be of first class quality and workmanship and would conform to the design specified by UCF. UCF further alleges that the design called for the bearings to be manufactured by CMC and that YCB could not assign the order without written permission from UCF. According to UCF, the bearings arrived stamped with CMC's mark, loaded in boxes labeled with CMC's name, and shipped with a packing list on CMC letterhead that was

2

signed by CMC's general manager. But, UCF alleges, the bearings were not manufactured by CMC and did not meet the design specifications warranted by YCB.

Finally, UCF alleges that YCB is not just a middle man that purchases bearings from CMC to resell, but instead is an alter ego of CMC. Specifically, UCF alleges that YCB is owned and controlled by CMC and that it submitted the purchase orders to both CMC and to YCB for the bearings that it ordered. Moreover, according to UCF, YCB represented on its invoices that it was the sales office of CMC. In 2009, UCF's president met with officers of both YCB and CMC in New Jersey to discuss the bearings and the officers of both companies represented that the bearings were manufactured by CMC.

## II. YCB's Motion to Dismiss and Motion to Strike

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) test the sufficiency, not the merits of the complaint. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). To survive a motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by alleging sufficient facts to raise a right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The federal pleadings rules do not, however, require a plaintiff to plead specific facts. *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). In addition, the Court will treat all well pleaded facts as true, and draw all reasonable inferences in the plaintiff's favor.

Motions to strike affirmative defenses are disfavored because they potentially only serve to delay. *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Still, affirmative defenses are pleadings and must meet the federal pleading requirements. *Id.*

*A.    UCF's Breach of Contract and Breach of Warranty Claims and Defenses*

3

YCB argues that UCF's affirmative defenses and counterclaims for breach of contract and breaches of warranty fail to adequately allege notice as required by 810 ILCS 5/2-714, which is modeled after U.C.C. § 2-607(a). In general, Illinois law requires buyers who have already accepted goods to notify the seller of the troublesome nature of a particular transaction prior to filing a lawsuit for a breach of warranty. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 589, 174 Ill.2d 482, 492 (1997). The reason behind the rule is that the Uniform Commercial Code prefers that the breach be cured without a lawsuit. *Tudor v. Jewel Food Stores, Inc.*, 681 N.E.2d 6, 11, 288 Ill. App. 3d 207, 214 (1997). There are, however, two exceptions to the rule. Direct notice is unnecessary when: (1) the seller has actual notice of the defect of the particular product; and (2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint. *Connick*, 675 N.E.2d at 589. General knowledge of problems with a particular product line is not sufficient to provide notice. *Id.* at 590. Rather, the manufacturer must somehow be apprised of the trouble with a particular product purchased by a particular buyer. *Id.* However, it is not necessary to list specific claims of breach of warranty when giving notice — only that there is a particular transaction that is troublesome and must be watched. *Id.*

UCF argues that the notice requirement of U.C.C. § 2-607(a) is obviated because it has alleged that YCB and CMC participated in a fraud in which they falsely represented to it that the bearings were manufactured by CMC, and thus, they had actual notice of the defect of the product. YCB seems to acknowledge that if the Court accepts UCF's allegation that YCB sold it counterfeit bearings that YCB did have actual knowledge of a breach of contract. Nonetheless, YCB still argues that UCF's claim should be dismissed based largely on a hyper-technical parsing of UCF's Counterclaim.

In short, YCB construes UCF's breach of contract and warranty claims to have two parts: (1) claims that YCB sold UCF counterfeit bearings and (2) claims that YCB sold UCF bearings with other

4

defects. This is, however, a tortured construction of UCF's allegations. UCF does not allege that counterfeit and defective bearings are two separate and distinct groups of bearings that are the basis of its breach claim. Rather, UCF alleges that the bearings had defects *because* they were counterfeit. Even if this were not the case, the notice requirement need not make the seller aware of each and every potential defect of a particular product, but only that particular transactions were troublesome. *Connick*, 675 N.E.2d at 590. UCF has done so. It alleges, among other things, that it had contracts with YCB and CMC that required that they deliver bearings manufactured by CMC and that representatives from both YCB and CMC falsely represented that the bearings shipped to UCF were manufactured by CMC when in fact they were not. It is plausible to infer from these allegations that YCB and CMC knew of their breach and of UCF's claim based on that breach.

YCB also argues that UCF does not plead that YCB had actual knowledge that the bearings were counterfeit until a later count in the Complaint that is not incorporated by reference into the breach of contract and warranty claims. This level of parsing borders on the absurd. Moreover, it is not accurate. In Paragraphs 47-52 of the Counterclaim, UCF makes clear that YCB and CMC made false representations about the origins of the bearings.

Finally, even if the Court were to hold that UCF had not adequately pleaded actual knowledge of the breach, the Court is not certain that the Illinois Supreme Court would require notice in this instance.[1] Although the Illinois Supreme Court has previously held that only a consumer who suffers a personal injury can meet the notice requirement of § 2-607(a) by filing suit, the Illinois Supreme Court has not spoken on whether the notice requirement applies to counterclaims. The Illinois Supreme Court

---

[1] Where a federal court sitting in diversity is called on to decide an unsettled question of state law, it should determine how the state Supreme Court would rule. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 720 (7th Cir. 2004).

5

has stated that the principal purpose of the notice requirement of § 2-607(a) is to favor settlement of disputes over litigation. *Connick*, 675 N.E.2d at 589-590; *see also Schreib v. Walt Disney Co.*, 2006 WL 573008, at *5 (Ill. App. Ct. Feb. 1, 2006); *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1025, 296 Ill. App. 3d 935, 939 (1998). Given that YCB already has commenced litigation in this instance, the purpose behind the notice requirement of § 2-607(a) could not be served and, the Court believes that the Illinois Supreme Court would find a third exception to the general rule that a buyer must provide notice before asserting a claim for a breach.

The Court DENIES YCB's Motion to Dismiss UCF's claims asserting a breach. The Court further DENIES YCB's Motion to Strike UCF's affirmative defenses asserting a breach.

*B.    UCF's Fraud Claims and Defenses*

YCB next argues that Counts VI-VII of UCF's Counterclaim should be dismissed because YCB has not pleaded these claims with sufficient particularity. All three of these Counts to UCF's Counterclaim involve an allegation of fraud: Count VI alleges common law fraud; Count VII alleges a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA); and Count VIII alleges a conspiracy to commit a tortious act (which must be one of the two prior fraud claims). Thus, each of these claims must be pleaded in conformity with the pleading requirements of Fed. R. Civ. P. 9(b). Fed. R. Civ. P. 9(b); *see also Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

Once again, YCB's argument relies upon a flawed and tortured construction of UCF's Counterclaim. YCB argues that UCF has done little more than name two corporations that have made frauds in some unspecified time or manner. YCB's representation of UCF's pleadings is terribly inaccurate. UCF makes numerous allegations that sketch out the particulars of its fraud claim. For

6

example, UCF makes several allegations regarding YCB's and CMC's misbranding of the bearings they shipped to UCF. UCF also makes allegations that YCB and CMC officers represented to it that the bearings shipped to it were manufactured by CMC. UCF makes allegations regarding the importance of the origin of the bearings it received.

YCB also argues that UCF has not specified a time frame in which the fraud occurred. But that argument does not accurately represent the allegations of the Counterclaim. UCF alleges that the fraud began, at the latest, in 2008, so they have made an effort to allege when the fraud began. The problem for UCF in alleging the precise time period of the fraud is that, according to it, YCB and CMC *concealed* their activity. UCF ordered millions of bearings from YCB and CMC. Given that a discrepancy between authentic bearings manufactured by CMC and allegedly counterfeit bearings may be difficult to ascertain, it is unreasonable to require UCF to know the precise date on which the alleged fraud began without the benefit of discovery.[2]

In reply, YCB suggests that UCF has not pleaded that they relied on any of YCB's or CMC's representations that CMC manufactured the counterfeit bearings. UCF, however, alleged that as a standard term and condition of its purchases, that YCB and CMC may not assign the order without UCF's prior written consent, an allegation from which it is reasonable to infer that UCF relied on YCB's and CMC's allegedly false representation that CMC manufactured the bearings.

Finally, YCB argues that UCF cannot state a claim under the ICFA because UCF is not a consumer and it has not pleaded a nexus between YCB's conduct and the welfare of consumers. The ICFA provides broader consumer protection than the common law action of fraud. *Brody v. Finch*

---

[2] Moreover, if UCF's allegations are true, then YCB and CMC have knowledge of that information

7

*Univ. of Health Sci.*, 698 N.E.2d 257, 267, 298 Ill. App. 3d 146, 157 (1998). The ICFA, however, does not reach so far as to encompass all commercial transactions or supplement every type of contract action. A breach of contract, without more, is insufficient to sustain a claim under the ICFA. *Id.* at 268. Instead, claims under the ICFA must satisfy the consumer nexus test, under which the relevant inquiry is whether the alleged conduct implicates consumer protection concerns. *Id.* at 268-69 (quoting *Lake Cnty Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 158 Ill. App. 3d 452, 459 (1995)) (internal quotation marks omitted). The Illinois Supreme Court has not examined the phrase "implicates consumer protection concerns," but Illinois Appellate Courts have required a party whose claim is premised upon a breach of contract to allege some nexus between the complained-of conduct and consumer protection concerns. *Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 221-22, 336 Ill. App. 3d 319, 324 (2003); *Brody*, 698 N.E.2d at 269; *Lake Cnty Grading Co.*, 654 N.E.2d at 1115; *Athey Prod. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996).

UCF has, however, alleged such a nexus. UCF alleged that YCB and CMC fraudulently sent it counterfeit bearings. It further alleged that the counterfeit bearings were manufactured utilizing an unapproved and inferior process that resulting in bearings that were inferior to those that were manufactured by the approved process. It alleged that these inferior bearings were then incorporated into products, including "vehicles," sold to consumers. YCB suggests that UCF's allegations of fraudulent conduct speak only to the counterfeit bearings and not inferior bearings. That is an overly narrow reading of the Complaint, and warrants no discussion.

The Court holds that UCF has adequately pleaded its fraud claims and DENIES YCB's Motion to Dismiss those claims. The Court DENIES YCB's Motion to Strike UCF's Eleventh Affirmative Defense (which is premised on the argument that UCF did not adequately plead the elements of fraud).

C. *UCF's Declaratory Judgment Claim*

YCB also moves to dismiss UCF's declaratory judgment claim, arguing that it is premature. The Court agrees. UCF alleges that the contracts between it and YCB and CMC required those companies to assist it in any litigation where damages might have been caused by defects in the bearings. However, UCF has not pleaded that it even has distributed the counterfeit bearings, much less that the companies that received the bearings will soon file suit against it. And while YCB's and CMC's renunciation of obligations under the contract might suggest that there is an actual case or controversy between the parties, that does not mean that the Court should exercise its discretion to resolve a dispute that is not ripe. *Brandt v. Village of Winnetka, Ill.*, 612 F.3d 647, 650 (7th Cir. 2010). The Court exercises its discretion and declines to issue a declaratory judgment in the absence of any allegations that UCF's customers will indeed file suit against it. The Court DISMISSES Count IX of the Counterclaim and Third-Party Complaint without prejudice.

D. *UCF's Unjust Enrichment Claim*

YCB's argument to dismiss UCF's unjust enrichment claim merits little discussion. YCB argues that UCF cannot press a claim for breach of contract and unjust enrichment. YCB seems to recognize that a party may plead breach of contract and unjust enrichment claims in the alternative, *see Cromeens, Holloman, Sibert Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003), and argues only that UCF hasn't adequately alerted it that it is pleading in the alternative. This argument is without merit and wastes both the Court's and the parties' resources. *Mizuho Corp. Bank (USA) v. Cory & Assoc.*,

9

*Inc.*, 341 F.3d 644, 651 (7th Cir. 2003) (affirming district court's denial of motion to dismiss where pleading in the alternative was obvious from the face of the complaint). Once a valid contract is found to have existed, UCF may not recover on its unjust enrichment claim. *Cromeens, Holloman, Sibert, Inc.*, 349 F.3d at 397. The Court will not, however, impose hyper-technical pleading requirements or indulge motions that if granted result only in the filing of an amended complaint with minor grammatical changes, thereby wasting more Court time and party resources. The Court DENIES YCB's Motion to Dismiss YCB's unjust enrichment claim.

E.  *UCF's Failure of Consideration and Equitable Affirmative Defenses*

UCF raises three equitable affirmative defenses in addition to its defense of failure of consideration. YCB moves to strike each of these defenses, arguing that because UCF has accepted the bearings and retains possession of them, it is obligated to pay for them. The U.C.C. limits a buyer's remedies once goods are accepted. 810 ILCS § 5/2-607 (mirroring U.C.C. § 2-607); 810 ILCS 5/2-717 (mirroring U.C.C. § 2-717); *see also ECHO, Inc. v. Whitson, Co.*, 52 F.3d 702, 705 (7th Cir. 1995) (a buyer must pay for the goods it accepts). Illinois law thus allows UCF to raise the affirmative defenses that it revoked its acceptance of the bearings or that it is entitled to a set-off (which it has), but limits its other remedies for YCB's alleged breach. Given that UCF has accepted the bearings, its failure of consideration and equitable defenses are untenable under Illinois law, and the Court GRANTS YCB's Motion to Strike the Ninth, Twelfth, Thirteenth, and Fourteenth Affirmative Defenses.

F.  *UCF's Lack of Acceptance Affirmative Defense*

Again, YCB seeks to impose hyper-technical pleading requirements on UCF. UCF did, in fact, accept the counterfeit bearings. Its affirmative defense, however, clearly states that it has revoked its acceptance of those bearings. YCB suggests that the boilerplate invocation of that affirmative defense

is insufficient. The allegations contained in UCF's Counterclaim and Answer, however, do set forth the basis for this defense. The Court construes UCF's "Lack of Acceptance" Affirmative Defense as one for Revocation of Acceptance and DENIES YCB's Motion to Strike.

III. CMC's Motions to Dismiss for Lack of Personal and Subject Matter Jurisdiction[3]

CMC moves to dismiss UCF's Third-Party Claim against it, asserting that the Court lacks personal jurisdiction over it. CMC's argument can be disposed of quickly. In its memorandum in support of its motion, CMC admits that it sells its bearings to YCB, and in fact states that it sells only to YCB. Moreover, in its affidavit submitted in support of its motion, it never places into dispute any of the facts alleged by UCF to support the Court's exercise of jurisdiction over it: that YCB serves as CMC's sales office in the United States (a fact for which UCF offers support in the form of an invoice from YCB), that CMC does business in the United States through YCB, which is located in Illinois, that CMC has solicited orders in Illinois through YCB, that it receives orders, distributes orders, and ships products through YCB, and that CMC owns and controls YCB. Because CMC has not submitted an affidavit that calls into question any of these facts, the Court therefore accepts them as true. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-32 (7th Cir. 2003)

It is true that the jurisdictional contacts of a subsidiary are not ordinarily imputed to the parent. *Purdue Research Foundation*, 338 F.3d at 788 n.17. However, there are exceptions to that rule. *Id.* Where the parent exercises an unusually high degree of control or where the parent uses the subsidiary in such a way that the agency relationship can be perceived or where the subsidiary is merely an empty shell, then the acts of the subsidiary may be aggregated with the acts of the parent. *Id.*

---

[3] CMC joins YCB's 12(b)(6) Motion to Dismiss and adopts its reasoning. To the extent that the Court granted or denied YCB's Motion, it applies the same ruling to CMC.

11

UCF has easily met that standard. CMC sells bearings to YCB, and only to YCB. YCB holds itself out as CMC's sales office and customers wishing to buy CMC's products solicit their orders through YCB. UCF has alleged that CMC directs and controls those sales, alleging that CMC solicits, receives, distributes, and ships its products through YCB. From these facts, which CMC does not dispute, the Court infers that CMC uses YCB as a shell to conduct its business in Illinois (and in the United States in general). The undisputed facts make the agency relationship between YCB and CMC apparent. The Court DENIES CMC's 12(b)(2) Motion.

CMC recently filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the Court lacks subject matter jurisdiction because the amount in controversy is not met. This argument merits no discussion and the Court DENIES CMC's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

IT IS SO ORDERED.

11/10/10
Dated

Hon. William J. Hibbler
U.S. District Court