Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 7221 | **DATE** | 7/25/2012 |
| **CASE TITLE** | YCB International, Inc. vs. UCF Trading Co, Ltd. | | |

**DOCKET ENTRY TEXT**

The court adopts the Report and Recommendation of Magistrate Judge Mason [237] in full. Accordingly, UCF's renewed motion for discovery sanctions [185] is granted in part and denied in part. At trial, the jury will be instructed as follows: "YCB and CMC had a duty to preserve all documents and electronically stored information related to the claims and defenses in this litigation beginning in December 2008, but did not do so. As a result, written documentation of the testing CMC claims it performed on the Ruili bearings has been destroyed." In addition, YCB and CMC are ordered to pay UCF $1,000.00, and to pay the Clerk of Court $1,000.00. Those payments should be made by August 8, 2012. Finally, YCB shall forthwith produce any non-privileged documents contained within the black binder referenced during Mark Liu's deposition in accordance with the order of Magistrate Judge Mason.

■[ For further details see text below.]    Docketing to mail notices.

# STATEMENT

In its Amended Complaint, YCB International, Inc. ("YCB") alleges that UCF Trading Co. ("UCF") failed to pay for bearings that YCB delivered to UCF. (Dkt. No. 70.) In response to the allegations against it, UCF filed a counterclaim against YCB and a third-party claim against Yantai CMC Bearing Co. ("CMC"), YCB's parent company, alleging that YCB and CMC are both liable for providing "counterfeit" bearings from another manufacturer when the contract required them to manufacture the bearings themselves, unless they received written permission from UCF. (Dkt. No. 33.) UCF alleges that YCB and CMC obtained the bearings they sent to UCF from a third party, Ruili Bearing Co. ("Ruili"), and that the Ruili manufactured bearings are inferior in quality to those YCB and CMC should have supplied. (*Id.* ¶¶ 54, 59.)

The parties are currently engaged in a discovery dispute focusing on the scope of YCB and CMC's duty to preserve and produce records of the quality inspections that they assert they performed on the Ruili-manufactured bearings before sending them to UCF in 2004 through 2008. According to YCB and CMC, those tests show that the Ruili-manufactured bearings are of the same quality as those they would have manufactured themselves. After multiple failures to produce those documents despite several court orders requiring production (*See* Dkt. No. 237, at 5-7), CMC employees revealed at their depositions that all of the inspection reports for years prior to 2010 had been destroyed. (*Id.* at 7-9.)

UCF moved for sanctions against YCB and CMC, contending that they failed to implement a proper litigation hold to preserve relevant documents, and that they improperly destroyed the records of the quality inspections. (Dkt. No. 185.) UCF requested that the court dismiss CMC's and YCB's claims with prejudice, bar

## STATEMENT

YCB and CMC from presenting evidence that they inspected the Ruili-manufactured bearings, or enter an adverse-inference jury instruction because of the destruction of those documents. UCF also requested an award of its attorney's fees incurred in connection with its motions for sanctions and its motions to compel.

In a thirty-page opinion, Magistrate Judge Mason recommended that this court grant UCF's motion in part and deny it in part. (Dkt. No. 237.) Magistrate Judge Mason recommended that the court deny UCF's requests to dismiss YCB's and CMC's claims, to bar them from presenting evidence, and to give an adverse inference instruction, and instead instruct the jury as follows:

> YCB and CMC had a duty to preserve all documents and electronically stored information related to the claims and defenses in this litigation beginning in December 2008, but did not do so. As a result, written documentation of the testing CMC claims it performed on the Ruili bearings has been destroyed.

Magistrate Judge Mason also recommended that the court deny the request for attorney's fees, but instead order YCB and CMC to pay UCF $1,000, and to pay the Clerk of Court $1,000. Finally, Magistrate Judge Mason ordered YCB to produce any non-privileged documents contained within a black binder referenced during Mark Liu's deposition that YCB had previously refused to produce.

Magistrate Judge Mason's thoughtful, comprehensive, and well-reasoned opinion, including its recitation of the tortuous discovery history of this case, provides ample support for his recommendations. The court will therefore adopt Magistrate Judge Mason's opinion in full. The court will also, however, provide a further discussion of some of the objections that both sides raise to Magistrate Judge Mason's recommendations.

### I. UCF's Objections

Magistrate Judge Mason's report and recommendation found that YCB and CMC breached their duty to preserve documents (Dkt. No. 237, at 20-21), but limited the severity of the sanctions it imposed because UCF did not show that it suffered substantial prejudice from the breach (*id.* at 22-29). First, UCF contends that the severity of YCB and CMC's conduct and particularly their repeated disregard for Magistrate Judge Mason's discovery orders (*see id.* at 21) justify more severe sanctions without a consideration of prejudice. (Dkt. No. 239, at 3-6.) As Magistrate Judge Mason explained, however, before imposing a severe sanction the court must consider "what effect—if any—the challenged conduct has had on the course of the litigation." *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993). Moreover, "[a]n award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery." *Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997) (citations and quotation marks omitted). The circumstances to be considered include the presence or absence of prejudice. *See Matei v. Cessna Aircraft Co.*, 35 F.3d 1142, 1147 (7th Cir. 1994) (affirming the district court's denial of sanctions because "any violation of Rule 26 which may have occurred did not significantly prejudice Cessna"). Limitation of sanctions because of limited prejudice is appropriate.

Moreover, the cases that YCB and CMC cite upholding a sanction of dismissal with prejudice because of repeated misconduct are not to the contrary, because they include findings of prejudice. *See Dotson v. Bravo*, 321 F.3d 663, 669 (7th Cir. 2003) ("The City and Bravo were prejudiced in their defense of this case."); *Patterson v. Coca-Cola Bottling Co. Cairo-Sikeston, Inc.*, 852 F.2d 280, 285 (7th Cir. 1988) ("Plaintiffs' failure

| STATEMENT |
|---|

to cooperate in discovery has prejudiced defendants.").

Second, UCF contends that it did suffer substantial prejudice from YCB and CMC's conduct. First, it contends that it could have used the quality inspection reports to show when CMC and YCB began to purchase bearings from Ruili, a fact necessary to calculate the damages UCF incurred from its acceptance of inferior bearings. UCF already has evidence, however, that CMC and YCB were purchasing bearings from Ruili as early as 2007. (*See* Dkt. No. 206, Ex. I, at 12:2-6.) Magistrate Judge Mason found that CMC's obligation to preserve the quality inspection reports began on December 19, 2008 (Dkt. No. 237, at 14), and that at that time it possessed reports dating back only to 2007 (*id.* at 17). If CMC had complied with its preservation obligations, therefore, at most it would have preserved documents showing the purchase of bearings from Ruili in 2007, which is cumulative with evidence UCF already has. Any prejudice is thus minimal.

UCF also contends that it was prejudiced because the quality inspection reports are the only evidence supporting CMC's claim that the Ruili bearings were of the same quality UCF would have received directly from CMC and YCB. The court is puzzled by that argument, because CMC and YCB will plainly suffer much greater prejudice from the lack of evidence supporting their position. At trial, CMC and YCB will have no evidence that they inspected Ruili's bearings to ensure quality other than the testimony of their employees. With no documentary evidence to support that testimony, the employees will seem less credible. Moreover, with the jury instruction Magistrate Judge Mason suggested, UCF will be able to argue to the jury the inference that the testimony is not credible in light of the absence of the reports and CMC and YCB's culpability in destroying them. It is not necessary, as UCF contends, that the instruction require the jury to presume the destroyed evidence was unfavorable to CMC and YCB. UCF can make that argument to the jury itself, likely to great effect, making the instruction adequate to correct what limited prejudice might accrue from the destruction of the quality inspection reports.

UCF also takes issue with Magistrate Judge Mason's conclusion that it is not prejudiced because it can ask for the same quality inspection records from Ruili. UCF protests that Ruili cannot be compelled to cooperate with such a request, and so that remedy is insufficient. UCF's argument fails, however, because it continues to fail to indicate that it has even asked Ruili for quality inspection reports or attempted to obtain them in any other way. The court will not simply assume those efforts would fail.

**II.     YCB and CMC's Objections**

YCB and CMC contend that they did not breach their preservation duty because, at the time they destroyed the quality inspection reports, they could not have reasonably anticipated litigation about the quality of the bearings they delivered to UCF. Magistrate Judge Mason found that the duty to preserve the quality inspection reports attached on December 19, 2008, the date the president of YCB send CMC's president an email referencing planning for a future lawsuit against UCF. (Dkt. No. 237, at 14.) YCB and CMC contend that email shows their anticipation of their lawsuit to recover the price of the goods they sold to UCF, a lawsuit that does not require them to show that the delivered goods were of the required quality, so long as UCF accepted them. *See* 810 ILCS 5/2-607(1). YCB and CMC's argument fails, however, because the duty of preservation extends to "any relevant evidence over which the non-preserving entity had control and reasonably knew or could reasonably foresee was material to a potential legal action." *China Ocean Shipping (Group) Co. v. Simone Metals Inc.*, No. 97 C 2694, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999). Any competent first-year law student

| **STATEMENT** |
|---|

would know that any action for breach of a contract for the delivery of goods on the basis of nonpayment could invite a counterclaim alleging that the delivered goods were nonconforming. Accordingly, YCB and CMC could reasonably foresee when they contemplated suing UCF that the quality inspection reports were material evidence in a potential legal action.

Second, YCB and CMC contend that CMC had no obligation to preserve its quality inspection reports merely because its subsidiary YCB was contemplating a suit against UCF. That argument overlooks the obvious: that the email of December 19, 2008, was sent to CMC's president, thus putting it on notice of the potential litigation. Because CMC had a central role in supplying the bearings that YCB used to fulfill its obligations under the contract, CMC could thus also foresee, even before it was a party to the suit, that its documents related to the bearings could be relevant to the lawsuit and that it had an obligation to preserve those documents. *See Ervine v. S.B.*, No. 11 C 1187, 2011 WL 867336, at *2 (N.D. Ill. Mar. 10, 2011) (duty to preserve extends to third-parties who should have known evidence may be relevant to future litigation).

Next, YCB and CMC assert that they had no duty to preserve documents related to UCF's counterclaim because UCF did not provide proper notice of a problem with the goods, as required by 810 ILCS 5/2-607(3)(a). Leaving aside that YCB and CMC's argument is more properly directed to the merits of the case, Judge Hibbler already rejected a similar argument in this case when denying YCB's and CMC's motions to dismiss. (Dkt. No. 64.) Judge Hibbler noted that there is an exception to the notice requirement if "the seller has actual knowledge of the defect of the particular product." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 597 (Ill. 1996) (quotation marks and citation omitted). Here, there is sufficient evidence that CMC and YCB knew that they were breaching the contract by delivering bearings from Ruili. Thus, they had actual knowledge of the defects that arose from providing counterfeit goods, so there was no notice requirement. (*See* Dkt. No. 64, at 4-5.)

YCB and CMC also contend that Magistrate Judge Mason erred by imposing sanctions without showing sufficient prejudice. The court need not find that the wronged party is incapable of proving an element of its case because of the offender's conduct before imposing sanctions, however, because sanctions may also aim to "punish the offending party" and "to deter future misconduct," as well as to remedy prejudice. *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *8 (N.D. Ill. Aug. 18, 2005); *see also id.* at *13 ("prejudice is not an element to imposing sanctions," although the court should consider it). Moreover, there is some prejudice to UCF in this case. Although, as Magistrate Judge Mason explained (Dkt. No. 237, at 23-24), there are other avenues by which UCF can prove its case, YCB and CMC's conduct has foreclosed UCF from obtaining significant evidence that would bolster the evidence from those other avenues. Accordingly, there is prejudice sufficient to support Magistrate Judge Mason's recommendation.

Next, YCB and CMC contend that UCF failed to establish that the quality inspection reports contained adverse evidence. Showing that destroyed documents contain adverse evidence is not a prerequisite for imposing sanctions, however. YCB and CMC cite *Wiginton v. Ellis*, No. 02 C 6832, 2003 WL 22439865 (N.D. Ill. Oct. 27, 2003), for that proposition, but *Wiginton* establishes only that an inference of adversity requires a showing of bad faith. *Id.* at *7 & n.6. It does not state that a finding of adversity is a prerequisite to imposing sanctions, a requirement that would be impractical because "the documents were destroyed" and "evidence that they contained adverse evidence is generally lost also." *Id.* at *7 n.6.

YCB and CMC next argue that Magistrate Judge Mason's finding that they were at fault for destroying

| STATEMENT |
|---|

the documents was improper, given that they could not anticipate the coming litigation and the relevance of the quality inspection reports. As explained above, however, YCB and CMC contemplated litigation against UCF to which the quality inspection reports were likely to become relevant. Their failure to impose any sort of litigation hold is thus sufficient to support Magistrate Judge Mason's finding of fault. (*See* Dkt. No. 237, at 19-21.)

YCB and CMC's other objections are similarly without merit. Accordingly, the court adopts the report and recommendation of Magistrate Judge Mason (Dkt. No. 237) in full.

*James F. Holderman*